# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| ERIC BOLTZ, et al., | Civil Action No. 1:16-cv-703 |
| Plaintiffs, | Dlott, J. |
| | Bowman, M.J |
| vs. | |
| UNITED PROCESS CONTROLS, *et al.*, | **ORDER** |
| Defendants. | |

This civil action is now before the Court on United Process Controls, Nitrex Metal, Inc., and Novacap, Inc. (collectively "Defendants") motion for a protective order (Doc. 40) and the parties' responsive memoranda. (Docs. 43, 45, 48) Specifically, Defendants seek an Order from the Court: (1) that emails inadvertently produced by Defendant United Process Controls ("UPC") are protected under the attorney work product doctrine and/or is an attorney-client privileged communication; (2) that the protection/privilege was not waived by Defendants' inadvertent production of the emails; (3) that Plaintiffs comply with Defendants' timely claw-back demand as required by Rule 26(b)(5)(B); and that, (4) Plaintiffs be ordered not to use or refer to the email or information contained therein for any purpose.

**I. Background**

Plaintiff Eric Boltz (hereinafter "Mr. Boltz") served as the Vice President for Operations ("VP Operations") and Yvonne Boltz as the Vice President of Energy Environmental Solutions for Defendants. Mr. Boltz managed two facilities in the United States, one in West Chester, Ohio and one in Milwaukee, Wisconsin, and two facilities in China.

On September 24, 2015, Mr. Boltz suffered an injury while bicycling causing him to become paraplegic. (Doc. 27-1 at PageID 453). Mr. Boltz was hospitalized in the Intensive Care Unit for one week and was then advised the he needed to undergo twelve weeks of rehabilitation before he could be released to his home. In mid-October, Mr. Boltz submitted a Disability Claim Form to UPC from his physician stating that he was currently unable to work, but would eventually be able to return to office/managerial work in four to six months.

According to the amended complaint, Mr. Boltz was anxious to return to work and advised management accordingly. However, Mr. Boltz alleges that it soon became clear that the company had different plans. According to the amended complaint, during a visit to his home, Paul Oleszkiewicz, UPC's President, expressed concern that Mr. Boltz could not run the company from a wheelchair.

The week prior to these comments, Oleszkiewicz sent separate letters to Eric and Yvonne Boltz notifying them that UPC was exercising its right to cancel the extensions of their employment contracts. However, UPC assured the Boltzes that the cancellations were just a formality, simply to allow the company to update the contract language. However, in light of Oleszkiewicz's private conversation with Mr. Boltz, they were suspicious about the company's plans.

In early November, Mr. Boltz was notified that he was being relieved of his duties with respect to the company's operations in China. He was also notified that he had to return his company car. A few weeks later, Mrs. Boltz was notified by UPC that it was terminating her employment, citing poor performance. Her job duties were suspended immediately.

Thereafter, Mr. Boltz received approval from his physician to return to work, and as an accommodation, requested to work from home initially and then transition into a more traditional schedule in the office. UPC resisted Mr. Boltz's return to work and ultimately determined that he could not work from home.

Mr. Boltz then contacted the President of Nitrex, and relayed his concerns about UPC's resistance to his return to work as well as Oleszkiewicz's discriminatory comments. Mr. Boltz's concerns were purportedly dismissed and his honesty was questioned. Communication between Mr. Boltz and UPC continued to deteriorate to the point where Mr. Boltz alleges that he was threatened with termination. On December 30, 2015, he submitted his resignation letter to UPC stating, *inter alia,* that his physical and mental health could not withstand the toxic environment UPC had created in response to his injury. (Doc. 19, ¶ 36).

Thereafter, Plaintiffs filed charges of discrimination and retaliation with the U.S. Equal Employment Opportunity Commission ("EEOC"), which thereafter issued Notices of Dismissal to Plaintiffs on or about June 15 and June 19, 2016, respectively. Eric and Yvonne Boltz initiated this lawsuit against UPC, Nitrex, and Novacap on June 22, 2016 in the Hamilton County, Ohio Common Pleas Court as case number A 1603643. (Doc. 1 at PageID 11–25.)

Defendants removed the case to the District Court on June 28, 2016. The Boltzes filed an Amended Complaint with leave of the Court on September 30, 2016. (Doc. 19.) They assert four claims for relief:

> Count I: Eric Boltz—Disability discrimination in violation of the American with Disabilities Act ("ADA"), 42 U.S.C. § 12112 and Ohio Revised Code §§ 4112.02(A) and 4112.02(J);

Count II: Yvonne Boltz —Associational disability discrimination in violation of the ADA, 42 U.S.C. § 12112, and Ohio Revised Code §§ 4112.02(A) and 4112.02(J);

Count III: Eric Boltz—Unlawful retaliation in violation of the ADA, 42 U.S.C. § 12203, and Ohio Revised Code §§ 4112.02(A) and 44112.02(J);

Count IV: Yvonne Boltz— Unlawful retaliation in Title VII, 42 U.S.C. § 2000e, et seq., and Ohio Revised Code §§ 4112.02(A) and 44112.02(J). (*Id.* at PageID 263–67.)

(Doc. 20.)

Defendants filed their Answer to the Amended Complaint on October 14, 2016.

## II. Facts related to the instant motion for Protective Order

On Friday, November 13, 2015, Dickinson Wright was first consulted and retained by UPC regarding the then-ongoing employment disputes between the Plaintiffs and UPC. (Doc. 40, Exhibit 1, Declaration of Paul Oleszkiewicz ¶ 11). On November 17, 2015, on behalf of Dickinson Wright, David Houston, Esq. asked Mr. Oleszkiewicz to provide him with introductory information about Eric Boltz' employment status. *Id.* ¶ 12. The next day, Mr. Oleszkiewicz sent an email to his U.S. colleague, Chris Morawski, a shareholder in UPC's parent company, and President of a sister Company, Nitrex USA Holding, Inc.

Within 16 minutes of receiving the email Mr. Morawski forwarded the email to David Houston, Esq, counsel for UPC. On the same day as the above emails were sent, a lengthy conference call between Mr. Oleszkiewicz, Mr. Morawski, and Counsel David J. Houston was held. *Id.* ¶ 15. Notably, Mr. Morawski would consult with Mr. Oleszkiewicz on management matters due to his greater knowledge of U.S. law and

due to the unavailability of Mr. Oleszkiewicz' normal senior manager, Michel Korwin. *Id.* ¶¶ 13-14.

During the course of discovery in this matter, Defendants contend that this string of emails is privileged and was inadvertently disclosed to Plaintiffs. On February 2, 2017, Defendants discovered this alleged inadvertent disclosure during the deposition of Oleszkiewicz when it was introduced as an exhibit by Plaintiffs' counsel. At that time, Defendants' counsel objected to the introduction of the email on record and instructed the witness not to answer. The very next day, Defendants' counsel sent a detailed "claw back" letter requesting the formal destruction or return of the alleged privileged documents pursuant to Rule 26 (b)(5)(B) of the Federal Rules of Civil Procedure.

Plaintiffs' disagreed that they were required to return the document. On February 17, 2017, Plaintiffs' counsel responded to Defendants' claw back letter providing a substantive response, including citations to case law, asserting that the Court should first determine if the email is in fact privileged and/or whether such privilege was waived by inadvertent disclosure. Counsel contacted the Court and Judge Dlott referred the matter to the undersigned for the sole purpose of resolving the discovery dispute related to the assertion of privilege.

Thereafter, in April 2017, Defendants submitted copies of the emails in question to be reviewed by the undersigned *in camera*. The undersigned also held a phone conference with the parties relating to the instant issues. In light of the nature of the dispute, the undersigned agreed that a formal motion for a protective order should be filed and set a briefing schedule. The undersigned also ordered the parties to submit a joint proposed 502(d) Order to chambers. (*See* April 27, 2017 minute entry). The next

day, Defendants filed the instant motion for a protective order asserting that the emails in question are privileged and that such privilege was not waived by Defendants inadvertent production of the email.

Additionally, in their reply memorandum, Defendants noted that they discovered additional emails from the same time period (UPC_03893 and UPC_0071-72) had been inadvertently disclosed since the filing of the motion for a protective order. (*See* Doc. 45). The parties agree, however, that these emails are actually an extension of the same content discussed in the email chain that is the subject of Defendants' initial Motion for Protective Order. As such, Defendants contend that UPC_03893 and UPC_00071-72 are privileged for the same reasons as those set forth in Defendants' Motion. Thus, Defendants contend that the following emails are subject to the instant motion for a protective order:

> 1. **PRIV_UPC_00071-72**: Sent November 18, 2015 at 10:25 a.m.
> Mr. Oleszkiewicz emails Jennifer Beach, the controller at UPC forwarding his draft answers to 12 numbered questions previously drafted in an email from Mr. Oleszkiewicz and Mr. Morawski dated October 27, 2015. Mr. Oleszkiewicz' email to Ms. Beach asks her to "please correct/add [to Mr. Oleszkiewicz' prior answers]."
>
> 2. **UPC_03893:** Sent November 18, 2015 at 12:27 p.m.
> Ms. Beach responds to Mr. Oleszkiewicz' prior email indicating that she is "still working on item 8" – i.e., question 8 of 12 from the answers in the October 27, 2015 email regarding Mr. Boltz' disability coverage.
>
> 3. **UPC_01588-1589:** Sent November 18, 2015 at 3:14 p.m.
> Mr. Oleszkiewicz emails Mr. Morawski summarizing the same information regarding Mr. Boltz's disability coverage as is set forth in the October 27, 2015 email from Mr. Oleszkiewicz to Mr. Morawski which is forwarded to Beach in Priv UPC 00071-72.[1]

---

[1] The un-redacted version is an email chain that begins with Mr. Morawski emailing attorney Houston on November 18 at 3:30 p.m. The text from Mr. Morawski is clearly privileged. However, Mr. Morawski also either forwards or cuts/pastes an email from Paul Oleszkiewicz sent on November 18 at 3:14 – it is this email that the Court will address. Additionally, the un-redacted version includes attorney Houston

**III. Analysis**

As noted above, the undersigned is presented with two issues relating to the emails in question: (1) whether the communications are privileged, and 2) if so, whether Defendants' waived any such privilege by inadvertently disclosing the emails in question to Plaintiffs' counsel. Upon careful review and for the reasons that follow, the undersigned finding that the communications in question are not protected by the work product doctrine and/or attorney-client privilege.

*A. Work Product*

"Under the work product doctrine, 'documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative' are protected from discovery." *In re Behr Dayton Thermal Prod., LLC*, 298 F.R.D. 369, 372 (S.D. Ohio 2013) citing Rule 26(b)(3). Rule 26(b)(3), which codifies the work–product doctrine, protects (1) "documents and tangible things;" (2) "prepared in anticipation of litigation or for trial;" (3) "by or for another party or its representative." *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009).

The Sixth Circuit adopted the "because of" test to determine whether a document was prepared in anticipation of litigation. That test is: "(1) whether a document was created because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose, and (2) whether that subjective anticipation of litigation was objectively reasonable." *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006).

Accordingly, to establish that the email is protected work product, Defendants must prove that "anticipated litigation was the 'driving force'" of the preparation of the

---

forwarding the email chain to Michelle Spiker on November 18th at 3:42 p.m. This email is also privileged.

email. *See Graff v. Haverhill North Coke Co.*, 2012 WL 5495514, *4 (S.D. Ohio 2012) (quoting *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009)). Plaintiffs contend that Defendants cannot prove either. The undersigned agrees.

Here, with respect to the emails exchanged between Oleszkiewicz and Morawski (UPC_01588-1589 and PRIV UPC _ 0071-72) Defendants contend that the emails in question constitute work product based on the following:

> Plaintiffs' multiple threatening communications to and actions toward UPC President, Paul Oleszkiewicz, including specific threats from Mrs. Boltz mentioning "my lawyer." (Doc. 40, Oleszkiewicz Dec. ¶¶ 5-6, 8).
>
> The timing of Mr. Oleszkiewicz' drafting of the email vis-à-vis those threats and other relevant events. *(Id.* ¶¶ 3-9, 12);
>
> The timing of Mr. Morawski's forwarding of Mr. Oleszkiewicz' email to counsel – namely that Mr. Morawski took 16 minutes to forward the email to counsel.
>
> The timing of the conference call between Messers Oleszkiewicz, Morawski and Attorney Houston regarding related privileged matters occurring the same afternoon that the email was originally sent (*Id.* ¶ 15).

Defendants further contend that there was no business purpose for Mr. Oleszkiewicz to prepare the email other than to outline some of the related employment facts to "tee up" a discussion with counsel. *Id.* at ¶ 16.

However, a review of the documents submitted *in camera* to the Court does not convince the undersigned that <u>a threat of litigation was the driving force</u> behind communication between Morawski and Oleszkiewicz. *See Graff v. Haverhill N. Coke Co.*, No. 1:09-CV-670, 2012 WL 5495514, at *6 (S.D. Ohio Nov. 13, 2012)(emphasis added). Notably, whether a party reasonably anticipated litigation at a particular point in time does not answer the question of whether a disputed document was prepared "because of" litigation or not. *See In re Professionals Direct Ins. Co.,* 578 F.3d at 439. If

the document was created as part of the ordinary business of a party and the ordinary business purpose was the "driving force" or impetus for creation of the document, then it is not protected by the work product doctrine. *Id.* (citing *Roxworthy,* 457 F.3d at 595). As noted by the Court in *Graff:*

> The document must be prepared because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation. Thus, we have held that materials prepared in the ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes are not documents prepared in anticipation of litigation within the meaning of Rule 26(b)(3).

*Graff v. Haverhill N. Coke Co.*, 2012 WL 5495514, at *4 (internal citations omitted).

Here, the subject of the email communication between Oleszkiewicz and Morawski centered on Eric Boltz' injury, short term disability payments, and his employment agreement. Notably, subject of the email is "Employment Agreement." As noted by Plaintiffs, Oleszkiewicz explained that he sent this email to Morawski because, as a "shareholder of Nitrex and someone [he's] known for a long time, [he] wanted [Morawski's] feedback." (Doc. 43, Ex. A, Oleszkiewicz Dep. at 207). He then obtained such feedback from Morawski in a subsequent conversation without legal counsel present. (*Id.*). In further trying to describe his contact with Morawski, he stated: "I don't remember. We were talking about this whole thing, okay, and he's experienced and you know, we were just talking, you know. I needed someone to talk to, okay." (*Id.*)

Thus, the emails from UPC's President and Plaintiff Eric Boltz's former boss, to Chris Morawski, a shareholder of UPC and an executive with an affiliated company of Defendants is better characterized as a discussion between two executives about the

how to handle the further employment and/or termination of Mr. Boltz based on the relevant facts. There is no indication that impending litigation was the "driving force" of this communication.

Similarly, UPC_03893 is an email sent by Ms. Beach (a corporate client) providing Mr. Oleszkiewicz (another corporate client) with information regarding Mr. Boltz' disability coverage, which information was then included in the email forwarded to Attorney Houston through Mr. Morawski. (Doc. 40, Oleszkiewicz Dec. ¶ 13).

Defendants contend that is exchange is also privileged because UPC_03893 was written in reply to Mr. Oleszkiewicz' request of Ms. Beach to compile information to be presented to Attorney Houston. Ms. Beach's responding email (UPC_03893), was sent to Mr. Oleszkiewicz within two hours of his request. However, as with the prior email, impending litigation was not the driving force of the communication. It was an ordinary business communication relating to Mr. Boltz's health insurance and long term disability coverage.

In light of the foregoing, the undersigned finds that the emails in question are not protected by the work-product doctrine.

### B. Attorney Client Privilege

Defendants further contend that the emails in question are also protected by the attorney client privilege. The attorney-client privilege is intended to encourage full and open communication between clients and their attorneys. *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981); *In re Grand Jury Proceedings October 12, 1995*, 78 F.3d 251, 254 (6th Cir.1996). The Sixth Circuit has held that the following criteria must be satisfied in order to hold that a communication is protected under the attorney-client privilege:

(1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) unless the protection is waived.

*Reed v. Baxter,* 134 F.3d 351, 355–56 (6th Cir.1998) (citing *Fausek v. White*, 965 F.2d 126, 129 (6th Cir.1992)).

To be privileged, communications between non-attorney corporate employees must be made in order to secure legal advice from counsel. *Upjohn Co. v. United States*, 449 U.S. 383, 394, (1981). *See also Graff v. Haverhill N. Coke Co., No. 1:09-CV-670, 2012 WL 5495514, at *7* (S.D. Ohio Nov. 13, 2012) ("communications among non-lawyer corporate personnel are protected if the dominant intent is to prepare the information in order to get legal advice from the lawyer") (internal citations omitted). Thus, to establish that this email between two non-attorneys is protected under the attorney-client privilege, Defendants must prove that the "dominant intent" of the communication was to secure "legal advice from [a] lawyer." *See Behr Dayton Thermal Prod.'s, LLC*, 298 F.R.D. 369, 375 (S.D. Ohio 2013) (*quoting Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, 2010 WL 5014483, *2 (S.D. Ohio 2010)).

Here, the parties agree that the emails were sent on the same day (November 18, 2015) and concern the same subject (Eric Boltz's employment). The emails are to and from non-attorneys. Nonetheless, Defendants contend that the emails fall squarely within the attorney-client privilege because they were written and sent in connection with trial counsel's directives.

Plaintiffs contend, however, that Defendants' position that the emails were sent at the direction of Defendants' counsel (and, therefore, privileged) is untenable. It

11

conflicts with Defendants' initial explanation that their counsel gave direction specifically to Morawski, not Oleszkiewicz. Also, the email chain in question began in October 2015, several weeks before Defendants engaged attorney Houston. As such, Plaintiffs contend that the evidence simply does not support Defendants' self-serving assertion that the emails were sent "at [the] direction of counsel." (Doc. 40, p. 5). The undersigned agrees.

Here, the *in camera* review of the emails does not indicate that the primary purpose and/or dominant intent of the communication was to seek legal advice. *See Upjohn,* 449 U.S. at 394, 101 S.Ct. 677. As noted above, the emails were written by and sent to non-attorney corporate employees relating to questions surrounding Eric Boltz' injury, health insurance, short and long term disability coverage, and his employment contract. *See Waters v. Drake*, No. 2:14-CV-1704, 2015 WL 8281858, at *4 (S.D. Ohio Dec. 8, 2015) (where the dominant purpose of such communications is not to secure legal advice or information requested by counsel, but to make some type of policy or business decision, the communication cannot be insulated from discovery just by sending a copy of it to a lawyer). *See also U.S. v. ISS Marine Services,* 905 F.Supp.2d 121, 129–130 (D.D.C. 2012) (for investigations, communications, and the like that are "of a nature that the business would ordinarily have conducted in all events," the privilege does not attach).

The fact that such information was later shared with counsel does not invoke the privilege. *See Shire LLC v. Amneal Pharm. LLC*, No. 2:11-CV-03781 SRC, 2014 WL 1334225, at *2 (D.N.J. Apr. 1, 2014) (finding an email sent from a non-attorney representative to another non-attorney who subsequently shared its contents with in-

house counsel was not privileged). *Neuder v. Battelle Pacific Northwest Nat. Laboratory,* 194 F.R.D. 289, 295 (D.D.C.2000) ( "documents prepared by non-attorneys and addressed to non-attorneys with copies routed to counsel are generally not privileged since they are not communications made primarily for legal advice").

Finally, even if this were a "close call," which this is not, "where 'the evidence equally supports an inference that the communication either was, or was not, related to the subsequent request for legal advice,' the Court must rule in the challenging party's favor." *In re Behr Dayton Thermal Prod.'s*, 298 F.R.D. at 375 (*quoting Comtide Holdings, LLC*, 2010 WL 5014483 at *3). Such would apply here.

In sum, the undersigned concludes that Defendants cannot satisfy their burden of proving that the emails, sent by and received by non-attorneys, are privileged. Additionally, because the emails in question are not privileged, the Court need not address whether Defendants waived any such privilege through its inadvertent disclosure of the emails.

### IV. Conclusion

In light of the foregoing, the undersigned finds that Defendants' motion for a protective order (Doc. 40) is **DENIED** *in toto.*

**IT IS SO ORDERED.**

    *s/*Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge

13